IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH VILLACCI, *et al.*,  )
                            )
         Plaintiffs,        )
                            )
    v.                      )   No. 14 C 3907
                            )
MARI HERRELL, *et al.*,     )
                            )
         Defendants.        )

MEMORANDUM OPINION AND ORDER

Plaintiffs are thirteen former police officers for the Memorial Park District ("District") in Hillside, Illinois. The District is a unit of local government organized under the Park District Code, 70 ILCS § 1205/1-1 *et seq*.

Plaintiffs allege that the District, its Director, its former Chief of Police, and the five individuals who serve on its Board of Commissioners (collectively, "Defendants") retaliated against them for exercising their First Amendment rights (Counts I and III) and terminated their employment in violation of their procedural due process rights (Count II). Count IV seeks a declaratory judgment that Defendants violated Plaintiffs' rights under the First and Fourteenth Amendments.

Defendants have moved to dismiss the first amended complaint, with prejudice, on the ground that it fails to state any claims upon which relief may plausibly be granted. *See* Fed.

R. Civ. P. 12(b)(6). I grant Defendants' motion to dismiss, in part, for the reasons stated below.

I.

At the motion to dismiss stage, I must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in Plaintiffs' favor. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). However, I "need not accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Id*. at 664-65 (internal quotation omitted).

A.

Plaintiffs were among a group of police officers who wanted to join the Illinois Council of Police ("ICP") union. *See* Dkt. No. 22 ("Am. Compl.") at ¶ 29. On December 10, 2013, the ICP filed a petition with the Illinois Labor Relations Board under 5 ILCS § 315/9 certifying that a majority of the District's police officers wanted the ICP to act as their exclusive representative. *Id*. at ¶ 30. On or around February, 25, 2014, the Illinois Labor Relations Board ruled that the ICP had made an adequate showing of majority interest and overruled the District's objections to the petition. *Id*. at ¶¶ 32-33.

On January 21, 2014, while the ICP's petition was pending, the District's Board of Commissioners ("Board") voted to keep the police department open. *Id*. at ¶ 34. Over the next month,

however, the Board held a closed door meeting at which the Commissioners discussed Plaintiffs as a group and whether to close the District's police department. *Id*. at ¶ 35.

On February 18, 2014, before the Illinois Labor Relations Board had ruled on the ICP's petition, the Commissioners reversed their prior decision and voted to eliminate the District's police department effective May 1, 2014. *Id*. at ¶ 36. When the police department officially closed, Plaintiffs were reclassified as security guards; forced to relinquish their police uniforms and commission cards; and told that they could no longer utilize firearms, handcuffs, or other law enforcement equipment. *Id*. at ¶¶ 38-39.

Plaintiffs remain employed by the District as "security officers" except for Joseph Villacci ("Villacci"), who was terminated on or around May 1, 2014. *Id.* at ¶¶ 4-16. In their new roles as security officers, Plaintiffs are expected to perform the same duties they performed as police officers, but without law enforcement equipment. *Id*. at ¶ 40.

B.

Plaintiffs have sued the District and seven of its officials--the Director, former Chief of Police, and five Commissioners--in their individual capacities.

In Count I of the complaint, Plaintiffs allege that Defendants retaliated against them for engaging in protected

3

First Amendment activity. Before the Board voted to dissolve the District's police department, Plaintiffs allegedly engaged in two forms of protected activity: (1) attempting to unionize the District's police officers and (2) raising concerns about "inoperable police radios, lack of firearm requalification and dilapidated law enforcement equipment." *Id.* at ¶ 47. Plaintiffs believe that Defendants took several adverse actions against them because of their union activities and complaints about inadequate training and equipment. *Id.* at ¶ 51 (alleging that adverse actions included "reclassification of their job duties; denial of renewed commissions; [and] deprivation of use of law enforcement equipment").

In Count II, Plaintiffs allege that Defendants deprived them of a protected property interest in their jobs as police officers without providing due process.

In Count III, Villacci alleges that the District retaliated against him for engaging in protected First Amendment activity. Villacci allegedly complained that:

> Plaintiffs were not receiving adequate firearm re-training; police radios were in poor condition; officer safety and citizen safety was in (and continues to be in) jeopardy because of the possibility of officers not able to communicate; and that other law enforcement equipment was unable to be used in the line of duty.

*Id.* at ¶ 60. Count III is effectively subsumed with Count I.

Finally, in Count IV, Plaintiffs seek a declaratory

4

judgment that the conduct alleged in the previous counts violates the First and Fourteenth Amendments.

Defendants have moved to dismiss Plaintiffs' complaint on several grounds.  The individual Defendants argue that they are entitled to legislative and/or qualified immunity and that the complaint fails to allege that they personally participated in the alleged constitutional violations and.  The District, in turn, argues that Plaintiffs have failed to allege plausible First Amendment or procedural due process claims.

II.

I start with the individual Defendants' arguments for dismissal.  A complaint fails to state a plausible claim when its factual allegations, accepted as true, show that one or more Defendants are entitled to immunity from suit.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

A.

"It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998).  *Bogan* held that "local legislators are likewise absolutely immune from suit under §

1983 for their legislative activities." *Id*. at 49.

Legislative immunity applies when a challenged action was both (1) "legislative in form" and (2) "legislative in substance." *Bagley v. Blagojevich*, 646 F.3d 378, 392 (7th Cir. 2011) (internal quotation omitted). "Whether an act is legislative [in form or in substance] turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Stated differently, "an ordinance adopted through the legislative process, and having the force of law, is covered by legislative immunity no matter the motives of those who proposed, voted for, or otherwise supported the proposal." *Benedix v. Vill. of Hanover Park, Ill.*, 677 F.3d 317, 318 (7th Cir. 2012).

1.

The Seventh Circuit has identified three types of activities that are legislative in form: "(1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process." *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997); *see also Bogan*, 523 U.S. at 55 (holding that introducing a budget ordinance, voting for it, and signing it into law are "formally legislative" acts because are

6

"integral steps in the legislative process").

In this case, Plaintiffs allege that the Board voted on January 21, 2014 to keep the District's police department open; held a closed door meeting over the next month at which they discussed Plaintiffs as a group; and voted on February 18, 2014 to eliminate the police department after all. *See* Am. Compl. at ¶¶ 34-36.

In essence, Plaintiffs are challenging the vote of each Commissioner to close the District's police department after the Board deliberated in private. Voting on a proposed ordinance is a "quintessentially legislative" act for which the Commissioners are entitled to absolute immunity. *Bogan*, 523 U.S. at 55; *see also Biblia Abierta*, 129 F.3d at 904 ("Introducing and voting on legislation are elements of the core legislative process and cannot be separated from that legislative function.").

Plaintiffs counter that legislative immunity does not protect the Commissioners because their private deliberations were not legislative in nature. This argument overlooks the fact that "debating" a proposed ordinance, whether in public or in private, is core legislative activity. *Id*. at 903. Moreover, anything the Board's private deliberations might reveal about each Commissioner's subjective motivations is irrelevant to legislative immunity. *See Bogan*, 523 U.S. at 54 (noting that court of appeals "erroneously relied on [mayor's

and city council member's] subjective intent in resolving the logically prior question of whether their acts were legislative").

In short, the Commissioners' public vote and private deliberations about whether to eliminate the District's police department were legislative in form.

2.

The key to determining whether a challenged action was legislative in substance is the "distinction between actions that involve the elimination of positions for policy reasons (legislative actions) and actions that result in an individual's termination for reasons that relate to that individual (administrative actions)." *Bagley*, 646 F.3d at 394; *compare Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003) (introducing county budget that eliminated employee's position was a substantively legislative action) *with Baird v. Bd. of Educ. for Warren Comm. Unit Sch. Dist. No. 205*, 389 F.3d 685, 696 (7th Cir. 2004) (terminating principal for reasons stated in performance evaluation was *not* a substantively legislative action).

The Board's vote to eliminate the entire police department, as opposed to firing only select police officers, clearly falls on the legislative side of this dichotomy. The Supreme Court explained in *Bogan* why eliminating an entire department of

8

government is a substantively legislative action:

> The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office. And the city council, in eliminating [an entire department], certainly governed in a field where legislators traditionally have power to act.

523 U.S. at 55-56; *see also Bagley*, 646 F.3d at 394 (holding that governor's line item veto of the captain position in the Illinois Department of Corrections was a substantively legislative action); *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1998) (holding that local commissioners who voted to eliminate plaintiffs' jobs from city budget took a substantively legislation action).

In sum, the five members of the Board of Commissioners were acting legislatively, in form and in substance, when they voted to eliminate the District's police department. It follows that Counts I and II must be dismissed with respect to Commissioners Alesia, Evans, Miller, Russo, and Sartore.

In contrast, the complaint is silent about what role, if any, the other individual Defendants--the District's Director (Mari Herrell) and its former Chief of Police (Sam Sei)--played in the Board's vote to eliminate the police department. Therefore, I cannot decide at the pleading stage whether

9

Defendants Herrell and Sei are entitled to legislative immunity.

B.

Defendants Herrell and Sei have moved to dismiss Counts I and II on two additional grounds: (1) that the complaint fails to allege that they personally participated in the alleged constitutional violations and (2) that they are entitled to qualified immunity because the constitutional rights they allegedly violated were not clearly established.

1.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003) (internal quotation omitted).

While the complaint is silent about what role (if any) Defendants Herrell and Sei played in the decision to eliminate the District's police department, Paragraph 51 plainly alleges that they retaliated against Plaintiffs for engaging in protected First Amendment activities. *See* Am. Compl. at ¶ 51 (alleging that "Defendants did, as retaliation against Plaintiffs, take numerous tangible, material, adverse employment actions (e.g., reclassification of their job duties, denial of renewed commissions; deprivation of use of law enforcement

equipment) against Plaintiff[s] because of [their] speech of public concern"). This allegation, directed against Defendants as a group, puts Defendants Herrell and Sei on notice of how they allegedly participated in a First Amendment violation. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (holding that allegation directed against defendants as a group satisfied personal involvement requirement for § 1983 claims).

I need not decide whether Plaintiffs have adequately alleged that Defendants Herrell and Sei were personally involved in violating their due process rights because that claim, Count II, fails on other grounds. *See infra* at § III.B (holding that Plaintiffs have failed to allege a plausible property right to continued employment as police officers).

2.

The only remaining argument for dismissing Count I as to Defendants Herrell and Sei is that they are entitled to qualified immunity.

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014) (per curiam). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"

11

*Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011) (cautioning courts "not to define clearly established law at a high level of generality").

The relevant question in this case is whether, at the time of the alleged retaliation, Defendants Herrell and Sei reasonably could have believed that complaints by police officers about inadequate training and equipment were unprotected speech. *See Lane v. Franks*, 134 S.Ct. 2369, 2381 (2014) (framing qualified immunity question in a First Amendment case along similar lines). The answer is no.

In *Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir. 1997), the Seventh Circuit held that police supervisors who allegedly retaliated against officers because they voiced concerns about an order prohibiting follow-up investigation were *not* entitled to dismissal on qualified immunity grounds. The court stated: "It has...been clear for years that [employee] speech about police protection and public safety raises matter of public concern." *Id.* (citing *Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir. 1993); *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990) (en banc)).

Here, as in *Gustafson*, Plaintiffs have alleged that they raised concerns about departmental policies or practices that, in their view, compromised officer and public safety. "Under

these circumstances, it would be premature to find qualified immunity for the defendants [at the pleading stage]." *Id*.

III.

Unlike the individual Defendants, the District cannot invoke legislative or qualified immunity, *see Benedix*, 677 F.3d at 318-19, and has not challenged whether it caused the alleged constitutional violations, *id*. at 318 (legislation eliminating a public employee's position reflects the municipality's policy for purposes of *Monell* liability).

Instead, the District seeks dismissal on the ground that Plaintiffs have failed to allege plausible First Amendment or procedural due process claims. *See Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (per curiam) ("A plaintiff...must plead facts sufficient to show that her claim has substantive plausibility.").

A.

"To establish a claim for retaliation in violation of the First Amendment, a public employee must prove that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). The District challenges only the first element: whether Plaintiffs' alleged speech was constitutionally protected.

A public employee claiming that his speech is entitled to constitutional protection "must show that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Id.* (internal quotation omitted).

The District argues that Plaintiff's alleged speech fails the first two prongs of this test because it was (1) made pursuant to their official job duties rather than as private citizens and (2) did not address a matter of public concern.

1.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane*, 134 S.Ct. at 2379. "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.*

Plaintiffs allegedly engaged in two forms of speech: (1)

14

participating in the effort to unionize the District's police officers, see Am. Compl. at ¶ 29 and 49, and (2) expressing concern about "inoperable police radios, lack of firearm requalification and dilapidated law enforcement equipment," *id.* at ¶ 47.

Other than an oblique reference to views expressed at a "meeting," *id.* at ¶ 49, the complaint does not say when, where, or to whom Plaintiffs allegedly addressed their concerns about inferior training and equipment. Plaintiffs, however, are not required to plead these details in order to provide a "short and plain statement" of their claim. Fed. R. Civ. P. 8(a)(2); *see also Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996) (noting that First Amendment retaliation claims need not be pleaded with particularity).

Plaintiffs have not pleaded themselves out of court by alleging speech that was obviously made pursuant to their official job duties. There is, for instance, nothing in the complaint suggesting that Plaintiffs' official job duties required them to raise concerns about inferior equipment or inadequate training. *Cf. Garcetti*, 547 U.S. at 422 (holding that district attorney did not speak as a private citizen when, acting pursuant to his job duties, he wrote "a memo that addressed the proper disposition of a pending criminal case"). Moreover, the subject matter of Plaintiffs' alleged speech is

15

"non-dispositive" as to whether it should be regarded as public or private. *Id*. at 421; *see also Lane*, 134 S.Ct. at 2379 (public employee's speech is not necessarily made pursuant to official duties simply because it "relates to public employment or concerns information learned in the course of public employment").

The precise circumstances of Plaintiff's alleged speech--and, by extension, whether their speech was made pursuant to official job duties or as private citizens--will be fleshed out during discovery.

2.

A public employee's speech is entitled to First Amendment protection only if it "relate[s] to a matter of public concern" as opposed to "express[ing] a purely personal grievance." *Meade v. Moraine Valley Comm. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014). "Whether a statement rises to the level of public concern is a question of law, and in answering this question [courts] look to the 'content, form, and context' of the statement." *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). In order to apply the "public concern" test at the pleading stage, "the court need only know the gist of what [Plaintiffs] said, not the precise words [they] used to express [themselves]." *Jefferson*, 90 F.3d at 1296; *see also Kristofek*

*v. Vill. of Orland Hills*, 712 F.3d 979, 985 (7th Cir. 2013) (noting that public concern test "looks to the overall *objective* or *point* of the speech" rather than "fixating solely upon the speaker's motives" (emphasis in original).

The gist of Plaintiffs' alleged speech was that their equipment and training were inadequate. Villacci, in particular, voiced concern that these deficiencies were jeopardizing officer and public safety. Defendants' argument that this alleged speech concerns purely private matters is a non-starter for the reasons stated *supra* at § II.B.2 when rejecting Defendants Herrell and Sei's qualified immunity argument. *See Gustafson*, 117 F.3d at 1021 ("It has...been clear for years that speech about police protection and public safety raises matters of public concern.").

In sum, Plaintiffs have plausibly alleged that they spoke as private citizens on a matter of public concern. Accordingly, the District's motion to dismiss Counts I and III is denied.

B.

The District's final argument is that Count II should be dismissed because Plaintiffs have not alleged a plausible property interest in their continued employment as police officers.

"[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a

17

protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2013). "A property interest in continued employment 'can be created in one of two ways, 1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003)). "In the employment context, a plaintiff generally is required to show that the terms of his employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." *Cole*, 634 F.3d at 904 (quoting *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)).

Plaintiffs rely on the Memorial Park Police Department Rules and Regulations ("Rules") as the source of their purported right to continued employment as police officers.[1] *See* Dkt. No. 28 at Ex. A. Section IV of the Rules lists fifty-three prohibited acts, including several marked with an asterisk (*). Section V, entitled "Sanctions," explains that "[v]iolations

---

[1] The District argues that I may not consider the police department's rules and regulations because they were neither referenced in nor attached to Plaintiffs' first amended complaint. The Seventh Circuit has rejected this argument. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) ("In the district court...a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.").

marked with a * will result in immediate discharge and termination of employment." *Id*. at 11. In contrast, violations not marked with an asterisk "are to be considered as non-dismissable [sic] acts if an employee is charges [sic] with a first offense against any one of them." *Id*. at 11-12.

The asterisks do not define what constitutes "good cause" for termination; instead, they serve the limited purpose of distinguishing between first time offenses that will result in immediate termination and those and will result only in a reprimand or suspension. The fact remains that nothing in the Rules says that police officers may be fired only for good cause; only for violating one of the rules listed in Section IV; or only for one of the enumerated offenses marked with an asterisk. Indeed, the Seventh Circuit has held that enumerated grounds for discipline, up to and including termination, in police department regulations do *not* imply that employees may only be terminated for cause. *See Cromwell v. City of Momence*, 713 F.3d 361, 365 (7th Cir. 2013); *see also Border v. City of Crystal Lake*, 75 F.3d 270, 275 (7th Cir. 1996) ("[T]he fact that [municipality] has decided to give specific warning that certain behaviors...will be punished, perhaps even result in termination, is no limitation on its power to punish for other reasons (or indeed to terminate for no reason at all, since the employment is at will)."); *Campbell v. City of Champaign*, 940

19

F.2d 1111, 1112 (7th Cir. 1991) (observing that purpose of enumerating grounds for discipline in an employee handbook "is not to confer rights but to warn employees about conduct or circumstances that will result in termination or other adverse personnel action").

In sum, Plaintiffs' due process claim (Count II) must be dismissed because they have failed to identify a plausible basis for their purported right to continued employment as police officers.

### III.

Defendants' motion to dismiss is GRANTED in part for the reasons stated above. The only plausible claims in the first amended complaint are Count I (as to the District, Defendant Herrell, and Defendant Sei); Count III; and Count IV (as to the alleged First Amendment violations). The remainder of the complaint is dismissed with prejudice.

                                    **ENTER ORDER:**

                                    */s/ Elaine E. Bucklo*

                                    **Elaine E. Bucklo**
                                United States District Judge

Dated: December 18, 2014